BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SURIA M. BAHADUE (Cal. Bar No. 344369)
Deputy Chief, General Crimes Section
Assistant United States Attorney
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-5487
        Facsimile: (213) 894-0141
        E-mail:    suria.Bahadue@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:24-00641-SPG |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION |
| v. | Hearing Date: June 11, 2025 |
| CLAYTON MITCHELL, | Hearing Time: 10:00 a.m. |
| | Location:    Courtroom of the Hon. Sherilyn Peace Garnett |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Suria M. Bahadue, hereby files its sentencing position as to defendant Clayton Mitchell.

//

//

This position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 28, 2025                    Respectfully submitted,

                                       BILAL A. ESSAYLI
                                       Actin United States Attorney

                                       CHRISTINA T. SHAY
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/
                                       SURIA M. BAHADUE
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Within months of search warrants being executed on his residences, defendant Clayton Mitchell voluntarily spoke with law enforcement and admitted to his crime.  He later self-surrendered, agreeing to waive indictment and pleading guilty to conspiracy to straw purchase firearms.  In May 2025, U.S. Probation and Pretrial Services ("Probation") issued a Pre-Sentence Report and Recommendation Letter.  (Dkt. 26 ("Rec. Letter"); Dkt. 27 ("PSR").)  There, Probation calculated defendant's total offense level to be 13 and his criminal history category to be I, yielding a Sentencing Guidelines range of 12 to 18 months' imprisonment under the 2021 Sentencing Guidelines.  (PSR at 3.)  Probation recommended a sentence of 12 months' and one day. (Rec. Letter at 1.)

The government agrees with Probation's calculations, but not its recommendation.  Pursuant to its plea agreement and based on the 18 U.S.C. § 3553(a) factors, the government recommends a two-level variance, bringing defendant's total offense level to 11 and yielding a Sentencing Guidelines range within Zone B of 8 to 14 months.  For the reasons set forth below, the government agrees with defendant's recommendation of 24 months' probation and three-years of supervised release.[1]

---

[1] A sentence of probation is authorized when "the applicable guideline range is in Zone B of the Sentencing Table and the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c)(3) of § 5C1.1."

**II.   DEFENDANT'S CRIMES**

The parties agreed to the following facts set forth in the plea agreement:

Beginning on a date unknown and continuing until on or about June 15, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant conspired with Co-Conspirator 1 to knowingly purchase three firearms for, on behalf of, and at the request and demand of Co-Conspirator 1.  At all relevant times, defendant knew or had reasonable cause to believe that (1) Co-Conspirator 1 previously had been convicted of at least one crime punishable by imprisonment for a term exceeding one year; and (2) Co-Conspirator 1 intended to sell and otherwise dispose of the firearms in furtherance of a felony, namely, engaging in the business of dealing firearms without a license. At all relevant times, neither defendant nor Co-Conspirator 1 had a license to engage in the business of dealing firearms.

The objects of the conspiracy were accomplished, in substance, as follows: Co-Conspirator 1 sold firearms to customers in Los Angeles, California; defendant purchased firearms for, on behalf of, and at the request and demand of Co-Conspirator 1 from a Federal Firearms Licensee ("FFL") located in Renton, Washington; defendant represented to the FFL that he was the actual buyer of the firearms when in reality defendant was purchasing the firearms for, on behalf of, and at the request and demand of Co-Conspirator 1; defendant then transported the firearms from Renton, Washington to Los Angeles, California, where Co-Conspirator 1 resided, and delivered them to Co-Conspirator 1; and Co-Conspirator 1, in turn, sold the firearms

received from defendant to firearms customers in Los Angeles, California.

In furtherance of the conspiracy, defendant committed various overt acts within the Central District of California and elsewhere. Specifically, on May 8, 2023, at Co-Conspirator 1's request, defendant placed two online orders with Pantel Tactical, an FFL in Renton, Washington, for ten firearms, including a Taurus, model G2C, .40 caliber pistol, bearing serial number AEC154349, a Taurus, model G2C, .40 caliber pistol, bearing serial number AEC154470, and a Taurus, model G2C, .40 caliber pistol, bearing serial number AEC154319. Each of these firearms were manufactured outside of California and thus had to travel in interstate commerce to have been purchased in California.

On May 17, 2023, defendant went to Pantel Tactical to pick up his order.  While at Pantel Tactical, defendant completed a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473, in which he answered "yes" next to the question "are you the actual transferee/buyer of the firearm(s) listed on this form" and certified that his answers on the form were "true, correct, and complete." Despite those representations, on May 27, 2023, defendant drove from Renton, Washington to Co-Conspirator 1's residence in Los Angeles, California with the three Taurus firearms that defendant had purchased from Pantel Tactical. That same day, defendant delivered the three Taurus firearms to Co-Conspirator 1 in Los Angeles, California.

The next day, on May 28, 2023, Co-Conspirator 1 texted a photograph of the three Taurus firearms defendant had delivered to Co-Conspirator 1 to an individual who Co-Conspirator 1 believed was a

3

firearms customer but who was, in fact, a confidential informant working for ATF (the "CI"). On May 31, 2023, via text message using coded language, Co-Conspirator 1 told the CI that Co-Conspirator 1 only had three Taurus firearms left but that he would be getting a box of ten firearms. That same day, Co-Conspirator 1 met with the CI in a Ralph's parking lot in Los Angeles, California and sold the CI three Taurus firearms with scratched-off serial numbers, which were later confirmed to be the same three Taurus firearms that defendant had purchased from Pantel Tactical for, on behalf of, and at the request and demand of Co-Conspirator 1.

**III. PROBATION'S OFFENSE LEVEL CALCULATIONS**

The government agrees with Probation's Guidelines calculations, which track the parties' plea agreement.  (PSR ¶¶ 37-52; Dkt. 5, ¶ 12.)  Specifically, the government agrees with Probation's determination that defendant's total offense level is 13.  (PSR ¶ 52.)  Under U.S.S.G. § 2K2.1(a)(7), defendant's base offense level is 12, and under U.S.S.G. § 2K2.1(b)(1)(A), his offense level is increased two levels because the offense involved 3 to 7 firearms. (PSR ¶¶ 37-38.)  An additional four-level enhancement applies under U.S.S.G. 2K2.1(b)(5), because defendant sold two or more firearms to a co-conspirator who he knew or had reason to believe had been convicted of a felony and/or who was engaging in the business of firearms dealing without a license.  (Id. ¶¶ 41-42.)

The government further agrees that defendant is entitled to a two-level minor role adjustment for his role in the offense.  (Id. ¶ 13.)  To receive a role reduction, a defendant must be "substantially less culpable than the average participant" in the charged criminal activity.  U.S.S.G. § 3B1.2, cmt. n.3(A); see United

4

States v. Diaz, 884 F.3d 911, 914 (9th Cir. 2018). To determine whether a defendant is substantially less culpable than the average participant, a district court must (1) "identify all of the individuals for whom there is sufficient evidence of their existence and participation in the overall scheme;" (2) "calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline," noted below; and (3) "compare the defendant's culpability to that average."  United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022).  In addition, the Guidelines' commentary provides a list of non-exhaustive factors that courts "should consider" in determining whether to apply a role reduction.  United States v.  Quintero-Leyva, 823 F.3d 519, 523 (9th Cir. 2016).  Those factors are:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

Id.  The commentary notes explicitly state that the list of factors is "non-exhaustive." U.S.S.G. § 3B1.2, cmt. n.3(C). Once a court has considered all of the factors, "it may grant or deny a reduction even if some of the factors weigh toward the opposite result." Quintero-Leyva, 823 F.3d at 523.  "A district court, therefore, may grant a

minor role reduction even if some of the factors weigh against doing so, and it may deny a minor role reduction even if some of the factors weigh in favor of granting a reduction." Id. A district court may also "consider other reasons for granting or denying a minor role reduction." Id. The degree to which a factor exists matters because they do not represent a binary decision point that is or is not satisfied. United States v. Rodriguez, 44 F.4th 1229, 1234-35 (9th Cir. 2022). A defendant bears the burden of proving that she is a minor participant by a preponderance of the evidence. United States v. Rosas, 615 F.3d 1058, 1067 (9th Cir. 2010).

Here, defendant is substantially less culpable than the average participant in this crime based on the totality of circumstances. There are three total participants in this crime: defendant's co-conspirator, defendant, and the firearms customer who was a confidential informant. Based on the unique facts of this case, including that defendant was not involved in and did not appear to know about the underlying firearms deal, defendant's culpability falls below his co-conspirator, the seller, who arranged the controlled buy, and the buyer. (PSR ¶ 46.) Indeed, the minor-role factors bear this out: defendant had a limited understanding of the scope and structure of his co-conspirator's criminal activity; he did not participate in the planning or organizing of the co-conspirator's crime; he did not exercise decision-making or influence any decision-making; the nature and extent of his participation was limited; and there is no indication that he stood to benefit from this crime or, in fact, benefitted. Accordingly, the government agrees with Probation's assessment that defendant is entitled to a two-level minor role reduction.

6

Finally, under U.S.S.G. § 3E1.1, defendant's timely acceptance of responsibility warrants a three-level reduction, because he pleaded guilty in advance of trial and accepted responsibility for his crime.  (PSR ¶¶ 50-51.)

The government also agrees with Probation's criminal history calculation and that defendant falls within criminal history category I.  (PSR ¶¶ 57-60.)

With a total offense level of 13 and a criminal history category of I, Probation determined that the advisory Guidelines range is 12 to 18 months' imprisonment.  (Id. ¶ 110.)

**IV.   GOVERNMENT'S RECOMMENDED SENTENCE**

The government agrees with Probations calculation but recommends a two-level variance based on the 18 U.S.C. § 3553(a) factors, as further discussed below, which brings defendant's total offense level to 11 and his Sentencing Guidelines to a Zone B range of 8 to 14 months.  For the reasons set forth below, the government agrees with defendant's recommendation of 24 months' probation and recommends three years of supervised release.  That sentence appropriately reflects a balancing of the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, defendant's history and personal characteristics, protection of the public, just punishment, and fairness among similarly situated defendants.

Defendant committed a serious offense.  However, in mitigation, defendant's offense did not involve violence, brandishing a firearm, or injury to another.  As for defendant's personal history and characteristics, defendant has zero criminal history points and his last misdemeanor convictions occurred 25 years ago.  (PSR ¶¶ 57-58.) Defendant further endured a difficult childhood (id. ¶¶ 70-72),

currently cares for his mother (id. ¶ 74), and has been a productive member of society (id. ¶¶ 93-99), despite facing significant and personal hardships of losing a son three years ago and his uncle and cousin this past January (id. ¶¶ 79, 84).  Significantly, defendant accepted responsibility for his actions and expressed remorse for his crime.  He not only did so by pleading guilty, but he voluntarily spoke with law enforcement early, self-surrendered, and waived indictment, all of which show genuine contrition.  Moreover, he has taken steps in a positive direction, and a sentence of probation will help him continue in that direction.  (Def. Ex. A.)  Finally, the conviction and sentence provides significant deterrence as defendant will no longer be able to possess firearms, and no unwarranted disparities result, as defendant's sentence falls within what is authorized under the applicable Sentencing Guidelines.

Accordingly, the totality of circumstances support imposing a sentence of 24 months' probation and three years of supervised release.

## V.    CONCLUSION

For the foregoing reasons, the Court should impose a sentence of 24 months' probation, three years' supervised release, and a $100 special assessment.